IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

NO. 7:24-CV-1037-FL

| | |
|---|---|
| BRETT HUFFMAN, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>RC3 INNOVATIONS, LLC d/b/a )<br>ADVANTAGE MEDICAL, and ROBERT )<br>C. ANDERSON, JR., )<br>)<br>Defendants. ) | ORDER |

This matter is before the court on motion to dismiss for lack of personal jurisdiction by defendant Robert C. Anderson, Jr. ("Anderson") (DE 9). The motion has been briefed fully, and the issues raised are ripe for ruling. For the following reasons, the motion is denied.

## STATEMENT OF THE CASE

Plaintiff commenced the instant employment action September 27, 2024, in Superior Court of Pender County, North Carolina, asserting claims for violation of the North Carolina Wage and Hour Act, N.C. Gen. Stat. § 95-25.1 et seq. ("NCWHA") (count one); North Carolina Retaliatory Employment Discrimination Act, N.C. Gen. Stat. § 95-240 et seq. (count two); breach of contract (count three); and fraud (count four). Plaintiff asserts all four claims against his former employer, defendant RC3 Innovations, LLC d/b/a Advantage Medical ("Advantage"), and plaintiff asserts the NCWHA claim also against defendant Advantage's president and chief executive officer ("CEO"), defendant Anderson. Plaintiff seeks damages, costs, fees, and interest.

Defendants removed the action to this court November 1, 2024, on the basis of diversity jurisdiction. Defendant Advantage filed an answer November 8, 2024, and defendant Anderson filed the instant motion the same date, relying upon his own declaration. In opposition to the motion, plaintiff also relies upon his own declaration, as well as an Advantage employee handbook, dated February 2020 (the "employee handbook"). Defendant Anderson replied and plaintiff filed a surreply.

In case management order entered December 18, 2024, the court set a November 20, 2025, deadline for discovery.

## STATEMENT OF FACTS

The facts alleged in the complaint may be summarized as follows. Defendant Advantage is a Georgia company in the business of selling medical devices, including with "a network of employees and staff in North Carolina." (Compl. ¶ 2). In 2015, while residing in Wilmington, North Carolina, plaintiff "was approached by Advantage about becoming a sales representative for [its] business." (Id. ¶ 8). "Discussions led to [plaintiff] being presented an offer of employment with Advantage," December 8, 2021, including the following terms:

a. Base Salary of $65,000; plus [a 3.5% commission on sales]

b. $35,000 in guaranteed bonuses; plus

c. $10,000 signing bonus; plus

d. $6,000 for [a] mobile phone and car allowance.

(Id. ¶¶ 9-10).

Plaintiff "accepted Advantage's offer of employment on 9 December 2021, and immediately began working." (Id. ¶ 12). "For the majority of the first year, [plaintiff's] work with Advantage went smoothly and Advantage paid [plaintiff] the amounts [it] guaranteed [it] would pay him." (Id. ¶ 14). "Organizationally, [plaintiff] fell under Sales Manager, Rex Grigg

2

[("Grigg")] [who] reported to Vice President of Sales Fleet Medford [("Medford")] [who] reported to [defendant] Anderson." (Id. ¶ 15). "[A]s the president and CEO, [defendant] Anderson had the power to: hire and fire [plaintiff]; supervise and control [plaintiff's] work schedules and/or conditions of employment; determine [plaintiff's] compensation and method of payment; and maintain [plaintiff's] employment records." (Id. ¶ 16).

Plaintiff "was on a team of approximately 12 other sales representatives." (Id. ¶ 17). "2022 was an especially competitive year for medical sales in the North Carolina market as many medical systems were still rebounding from Covid-19." (Id.). "However, [plaintiff's] sales performance was on par with his peers," and plaintiff "performed exceptionally well considering that Advantage's largest client in [plaintiff's] sales territory closed his practice and moved to another state shortly after [plaintiff] began employment with Advantage." (Id.).

However, in October 2022, defendant Advantage failed to pay plaintiff approximately $5,000 of his guaranteed wages. Plaintiff notified Grigg, who had no explanation for the omission, and then Medford, who said that plaintiff would receive the withheld wages no later than November 2, 2022. (See id. ¶¶ 18-19). Plaintiff did not receive those withheld wages and again defendant Advantage failed to pay plaintiff approximately $5,346 in wages in December 2022.

"Between October 2022 and [plaintiff's] later termination from Advantage in February 2023, [plaintiff] repeatedly inquired about his missing wages." (Id. ¶ 22). Plaintiff filed "an Advantage payroll inquiry and submitted it through the proper channels," and he "checked in with [] Medford, and Advantage's in-house counsel . . . on the status of his missing wages." (Id.). According to the complaint "[d]efendant Anderson directed, and made the final decision, for Advantage to not pay [plaintiff] his guaranteed wages." (Id. ¶ 23).

3

In addition, pursuant to an Advantage "incentive program," plaintiff was guaranteed an additional $10,000.00 in compensation, in December 2022, which was not paid to plaintiff. (Id. ¶ 26). February 1, 2023, plaintiff sent through counsel "a demand letter to Advantage, demanding payment of his unpaid, guaranteed compensation." (Id. ¶ 29). Despite the "demand letter, and his prior inquiries about payment of guaranteed wages being protected activity under North Carolina law, Advantage terminated [plaintiff] days later." (Id. ¶ 30). According to the complaint, defendant Anderson "directed [plaintiff's] termination on behalf of Advantage." (Id. ¶ 31).

Plaintiff claims the termination was retaliation against him for "demanding the wages he was due." (Id. ¶ 32). After deducting amounts received in 2023, as detailed in the complaint, plaintiff remains due $25,281.36 in wages.

According to plaintiff's declaration, he was "one of three Advantage employees residing in North Carolina," and when he was terminated he was replaced by a resident of Charlotte, North Carolina. (Pl's Decl. (DE 13-1) ¶3). Defendant Advantage's "primary trade areas include Georgia, South Carolina, North Carolina, Alabama, Tennessee, [and] Florida." (Id. ¶4(b)). According to plaintiff "it was understood by all parties that [plaintiff] would be working out of [plaintiff's] home in North Carolina and that [plaintiff's] home would be within [plaintiff's] sales territory." (Id. ¶ 9).

Plaintiff alleges that defendant Anderson oversaw "all aspects of Advantage, and had the final say on many decisions including [plaintiff's] employment and pay." (Id. ¶ 10). He "was the individual that . . . directed [plaintiff's] 'Assigned Territory' to be North Carolina, and the individual who oversaw and directed Advantage's response to [plaintiff's] wage complaint." (Id. ¶ 12). Plaintiff also "had two phone calls with Anderson over the course of [his] employment." (Id. ¶ 13) "It was explicit to [plaintiff] from those phone calls that Anderson was well aware of

4

[plaintiff's] work in North Carolina and he encouraged [plaintiff] to keep growing [plaintiff's] business and client list in North Carolina." (Id.). Plaintiff is "aware of at least one, if not more, instance where Anderson traveled to North Carolina for the purposes of conducting business on behalf of Advantage." (Id. ¶ 14).

Additional facts pertinent to the instant motion will be discussed in the analysis herein.

## COURT'S DISCUSSION

A.   Standard of Review

Federal Rule of Civil Procedure 12(b)(2) provides for dismissal of a claim for lack of personal jurisdiction. "When a district court considers a question of personal jurisdiction based on the contents of a complaint and supporting affidavits the plaintiff has the burden of making a prima facie showing in support of its assertion of jurisdiction." Universal Leather, LLC v. Koro AR, S.A., 773 F.3d 553, 558 (4th Cir. 2014).[1]  At this stage, the court "must construe all relevant pleading allegations in the light most favorable to plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction." Combs v. Bakker, 886 F.2d 673, 676 (4th Cir. 1989); see Mylan Labs., Inc. v. Akzo, N.V., 2 F.3d 56, 60 (4th Cir. 1993) ("[T]he district court must draw all reasonable inferences arising from the proof, and resolve all factual disputes, in the plaintiff's favor.").

B.   Analysis

"A lawful assertion of personal jurisdiction over a defendant requires satisfying the standards of the forum state's long-arm statute and respecting the safeguards enshrined in the Fourteenth Amendment's Due Process Clause." Tire Eng'g & Distribution, LLC v. Shandong Linglong Rubber Co., 682 F.3d 292, 301 (4th Cir. 2012). Where, as here, "North Carolina's long-

---

[1]   Throughout this order, internal citations and quotation marks are omitted from all case citations unless otherwise specified.

arm statute is construed to extend jurisdiction over nonresident defendants to the full extent permitted by the Due Process Clause, . . . the dual jurisdictional requirements collapse into a single inquiry" into whether personal jurisdiction comports with due process. Christian Sci. Bd. of Directors of First Church of Christ, Scientist v. Nolan, 259 F.3d 209, 215 (4th Cir. 2001).

The due process inquiry "can be undertaken through two different approaches – by finding specific jurisdiction based on conduct connected to the suit or by finding general jurisdiction" based on "continuous and systematic" activities. ALS Scan, Inc. v. Digital Serv. Consul., Inc., 293 F.3d 707, 711 (4th Cir. 2002). Here, where plaintiff does not assert general jurisdiction, the court focuses on whether plaintiff has made a prima facie showing of specific jurisdiction.

"To decide whether specific jurisdiction exists, [the court must] examine (1) the extent to which the defendant purposefully availed [him]self of the privilege of conducting activities in the State; (2) whether the plaintiffs' claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable." Mitrano v. Hawes, 377 F.3d 402, 407 (4th Cir. 2004); see Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474-76 (1985).

As for the first prong, "[t]he purposeful availment inquiry . . . is flexible, and depends on a number of factors that courts consider on a case-by-case basis." Universal Leather, LLC, 773 F.3d at 559–60.

> In the business context, those factors include, but are not limited to, an evaluation of: (1) whether the defendant maintains offices or agents in the forum state; (2) whether the defendant owns property in the forum state; (3) whether the defendant reached into the forum state to solicit or initiate business; (4) whether the defendant deliberately engaged in significant or long-term business activities in the forum state; (5) whether the parties contractually agreed that the law of the forum state would govern disputes; (6) whether the defendant made in-person contact with the resident of the forum in the forum state regarding the business relationship; (7) the nature, quality and extent of the parties' communications about the business being
6

Case 7:24-cv-01037-FL   Document 20   Filed 02/24/25   Page 6 of 12

transacted; and (8) whether the performance of contractual duties was to occur within the forum.

Id. at 560.

As for the second prong, "[t]he inquiry whether a forum State may assert specific jurisdiction over a nonresident defendant focuses on the relationship among the defendant, the forum, and the litigation," Walden v. Fiore, 571 U.S. 277, 283-84 (2014), and not the "unilateral activity" of the plaintiff. Burger King, 471 U.S. at 474. "For a State to exercise jurisdiction consistent with due process, the defendant's suit-related conduct must create a substantial connection with the forum State." Walden, 571 U.S. at 284.

"The third prong—that the exercise of personal jurisdiction be constitutionally reasonable—permits a court to consider additional factors to ensure the appropriateness of the forum once it has determined that a defendant has purposefully availed [him]self of the privilege of doing business there." Consulting Eng'rs Corp. v. Geometric Ltd., 561 F.3d 273, 279 (4th Cir. 2009). "Such factors include: (1) the burden on the defendant of litigating in the forum; (2) the interest of the forum state in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the shared interest of the states in obtaining efficient resolution of disputes; and (5) the interests of the states in furthering substantive social policies." Id.

Here, plaintiff has demonstrated a prima facie case of personal jurisdiction over defendant Anderson based on the allegations in the complaint and his affidavit. Beginning with the purposeful availment inquiry, a number of factors demonstrate that defendant Anderson personally "established sufficient contacts or ties with the state" such that "he should reasonably anticipate being haled into court" here. Universal Leather, LLC, 773 F.3d at 559. According to plaintiff, defendant Anderson "directed [plaintiff's] 'Assigned Territory' to be North Carolina." (Pl's Decl. (DE 13-1) ¶ 3). "[I]t was understood . . . that [plaintiff] would be working out of [his] home in

7

North Carolina and that [his] home would be within [his] sales territory." (Id. ¶ 9). Defendant Anderson "had the final say on . . . [plaintiff's] employment and pay." (Id. ¶ 10). As such, defendant Anderson "reached into the forum state to solicit or initiate business," and plaintiff's performance "was to occur within the forum." Universal Leather, LLC, 773 F.3d at 560.

In addition, defendant Anderson personally had "two phone calls" with plaintiff, and "[i]t was explicit to [plaintiff] from those phone calls that Anderson was well aware of [plaintiff's] work in North Carolina and he encouraged [plaintiff] to keep growing [plaintiff's] business and client list in North Carolina." (Pl's Decl. (DE 13-1) ¶ 13). In at least one instance, "Anderson traveled to North Carolina for the purposes of conducting business on behalf of Advantage." (Id. ¶ 14). As such, defendant Anderson "deliberately engaged in significant or long-term business activities in the forum state," and he "made in-person contact with [plaintiff] in the forum state regarding the business relationship." Universal Leather, LLC, 773 F.3d at 560.

Furthermore, defendant Anderson was "the individual who oversaw and directed Advantage's response to [plaintiff's] wage complaint." (Pl's Decl. (DE 13-1) ¶ 12). "Defendant Anderson directed, and made the final decision, for Advantage to not pay [plaintiff] his guaranteed wages." (Compl. ¶ 23). Likewise, according to the complaint, defendant Anderson "directed [plaintiff's] termination on behalf of Advantage." (Id. ¶ 31). As such, "defendant's suit-related conduct . . . create[s] a substantial connection with the forum State." Walden, 571 U.S. at 284. Therefore, the first and second prongs of the specific jurisdiction test are met.

Factors bearing on the third prong, "that the exercise of personal jurisdiction be constitutionally reasonable," also favor plaintiff. Consulting Eng'rs Corp., 561 F.3d at 279. The "burden on defendant of litigating in the forum," id., substantially is tempered by the fact that intertwined claims are ongoing in this case against defendant Advantage, of which defendant

Anderson is CEO and president. They are both defendants in the same NCWHA claim, and thus litigation in this district furthers "plaintiff's interest in obtaining convenient and effective relief" and the shared interest of the states "in obtaining efficient resolution of disputes." Id. In sum, defendant Anderson has "established sufficient contacts . . . with the state of the forum to make it reasonable and just . . . to permit the state to enforce the obligations which the defendant has incurred" in North Carolina. Universal Leather, LLC, 773 F.3d at 559.

Defendant Anderson's arguments to the contrary are unavailing. Citing to his own declaration, defendant Anderson asserts that he "did not reach out to Plaintiff to solicit his employment, sign Plaintiff's offer letter or employment agreement, or participate in regular supervision or coaching relating to Plaintiff's work performance." (Def's Mem. (DE 10) at 6). He also asserts in his declaration "I did not visit [plaintiff] in North Carolina or regularly contact him individually for any purpose." (Anderson Decl. (DE 10-1) ¶ 11). These assertions, however, do not undermine plaintiff's own allegations set forth above regarding the role defendant Anderson played in his employment, non-payment of wages, and termination. Indeed, while the complaint reveals that Medford signed the employment offer and agreement, (Compl. Exs. A-B), plaintiff also alleges that defendant Anderson "directed [plaintiff's] 'Assigned Territory' to be North Carolina" and "had the final say on . . . [plaintiff's] employment," "pay," response to plaintiff's wage complaints, and termination. (Pl's Decl. (DE 13-1) ¶¶ 3, 10, 13; Compl. ¶¶ 23, 31). Plaintiff alleges Anderson "encouraged [plaintiff] to keep growing [plaintiff's] business and client list in North Carolina," and that Anderson traveled at least once to North Carolina to further that business. (Pl's Decl. (DE 13-1) ¶¶ 13-14). To the extent there are conflicts in the allegations and competing inferences, the court "must draw all reasonable inferences arising from the proof, and resolve all factual disputes, in the plaintiff's favor" and "draw the most favorable inferences for the existence

9

of jurisdiction," Combs, 886 F.2d at 676; Mylan Labs., 2 F.3d at 60. When so credited, plaintiff's allegations are sufficient to establish purposeful availment on the part of defendant Anderson.

Defendant Anderson also asserts additional facts regarding his lack of connection to North Carolina, such as the following: 1) his "primary residence is in . . . Florida," 2) he does not "maintain bank accounts in North Carolina," 3) he "does not conduct regular work activities in North Carolina," 4) he "does not regularly travel to North Carolina for personal or recreational purposes," 5) he "does not regularly contact any individuals in North Carolin, for personal or business reasons," and 6) the "last time [he] was physically present [in] North Carolina was September 1, 2024." (Anderson Decl. ¶¶ 2-6, 13). Although these assertions touch on some of the enumerated factors set forth in Universal Leather, 773 F.3d at 560, they do not outweigh plaintiff's allegations related to other factors specific to defendant Anderson's direction of plaintiff's employment, territory, wages, and termination in North Carolina. (E.g., Compl. ¶¶ 23, 31, 45; Pl's Decl. (DE 13-1) ¶¶ 3, 9-10, 13-14).

Defendant Anderson argues that plaintiff's allegation is "speculative," as well as "formulaic, conclusory, and unsupported," in stating that "[d]efendant Anderson made the final decision to not pay [plaintiff] and ultimately directed [plaintiff's] termination." (Def's Mem. (DE 10) at 6-7 (quoting Compl. ¶ 45); Def's Reply (DE 17) at 6 (quoting Compl. ¶¶ 23, 31)). However, the court does not discount this allegation as speculative or conclusory at this juncture, because it is supported by other facts alleged in the complaint and in plaintiff's declaration. See Combs, 886 F.2d at 676; Mylan Labs., 2 F.3d at 60. For instance, plaintiff alleges he was only "one of three employees residing in North Carolina," and that North Carolina was one of the "primary trade areas" of Advantage. (Pl's Decl. (DE 13-1) ¶¶ 2, 4(b)). Plaintiff also alleges defendant Anderson's direction of plaintiff's territory assignment and encouragement of plaintiff. (Id. ¶¶ 3, 13). In

10

addition, the employee handbook establishes close involvement of defendant Anderson in personnel matters, including that an employee's "performance will be evaluated by the President on an ongoing basis."  (Id. ¶ 4(g)).[2]  Drawing inferences from these and all of the allegations in plaintiff's favor, it is thus not speculative for plaintiff to allege that defendant Anderson "made the final decision to not pay [plaintiff] and ultimately directed [plaintiff's] termination."  (Compl. ¶ 45).

Defendant Anderson cites Brinson v. Brosnan, No. 5:21-CV-00151-M, 2022 WL 325455, (E.D.N.C. Feb. 2, 2022), for the proposition that "a corporation's contacts with the forum are generally not attributed to individual defendants," and "a court cannot exercise jurisdiction over an individual based solely on his connection to a corporation."  (Def's Mem. (DE 10) at 7-8 (quoting Brinson, 2022 WL 325455 at *3).  In the instant decision, however, the court does not rely upon attributing defendant Advantage's contacts with the forum to defendant Anderson, nor based solely on his connection to defendant Advantage.  Rather, the court bases its jurisdictional analysis on defendant Anderson's own alleged personal actions, directions, and contacts regarding plaintiff's employment in North Carolina.  In this manner, Brinson is distinguishable because there the complaint did "not contain a single allegation about" the individual defendants.  Id.  An additional case cited by defendant Anderson, Metro. Reg'l Info. Sys., Inc. v. Am. Home Realty Network, Inc., 888 F. Supp. 2d 691 (D. Md. 2012), similarly is distinguishable because there the plaintiff only alleged an individual officer's "oversight and management responsibility for [the

---

[2] Defendant Anderson argues that the court should not consider or presume true plaintiff's statements about the contents of the employee handbook, noting plaintiff has not established it was in force during his employment, and that plaintiff has "cherrypicked" favorable provisions. (Reply (DE 17) at 1).  The court does not, however, rely upon all of plaintiff's representations about the employee handbook, and the portion quoted herein is not "cherrypicked" but rather stated without qualification in the handbook. (DE 13-1 at 25 ("Employee Handbook Page 15 of 41")).  Moreover, the court leaves for another day, upon a more complete record, whether the handbook cited by plaintiff is representative of defendant Anderson's activities during the period of plaintiff's employment.

11

company's] activities," not activities by the individual officer directed to the plaintiff. Id. at 699-700 (emphasis added).

Defendant Anderson also faults plaintiff for arguing in opposition to dismissal that because defendant Anderson is an "employer" under the NCWHA then defendant Advantage's actions are imputed to him. (Reply (DE 14) at 4). He notes that it is well settled that "the contacts of a company are not attributed to a corporate agent for jurisdictional purposes." (Id. (quoting ePlus Tech., Inc. v. Aboud, 313 F.3d 166, 177 (4th Cir. 2002)). The court does not base its jurisdictional determination, however, on defendant Anderson's status as an "employer" under the NCWHA. At the same time, "merely because [the officer's] contacts with the [forum state] were made ostensibly on behalf of [a company] . . . does not somehow insulate [him] from jurisdiction." Id. "Each defendant's contacts with the forum State must be assessed individually." Calder v. Jones, 465 U.S. 783, 790 (1984). Here, that individual assessment provides sufficient basis to state a prima facie case of personal jurisdiction over defendant Anderson.

In sum, plaintiff has made a prima facie showing of personal jurisdiction over defendant Anderson based upon his alleged contacts directed to plaintiff and concerning plaintiff in North Carolina. Therefore, defendant Anderson's motion to dismiss must be denied.

## CONCLUSION

Based on the foregoing, defendant Anderson's motion to dismiss for lack of personal jurisdiction (DE 9) is DENIED. Defendant Anderson shall file a responsive pleading within 14 days of the date of this order, pursuant to Rule 12(a)(4)(B).

SO ORDERED, this the 24th day of February, 2025.

_____
LOUISE W. FLANAGAN
United States District Judge